C. G. Epley *et al.* v. Charles Loran Moore.

(Filed September 5, 1901.)

1. **OFFICE OF PROBATE JUDGE AN ELECTIVE OFFICE.** Prior to the Statutes of 1893, the legislature of Oklahoma made no provision for the election of probate judges, and under the laws of the United States applicable to Oklahoma, the office of probate judge, prior to that time, was an appointive and not an elective office, but since the Statutes of 1893 took effect the office of probate judge has been an elective and not an appointive one.

2. **MANDAMUS WILL NOT LIE, WHEN—County Election Canvassing Board Bound by Tall Sheets.** Under the election law of 1899, the judges of election are not required to attach to the election returns a certificate showing the number of votes cast for the respective candidates, and the board of county commissioners, when acting in the capacity of a county canvassing board, are bound, in the absence of fraud, by the tally-sheets returned to them from the respective voting precincts; and it is the duty of such canvassing board to award a certificate of election to the candidate receiving the largest number of votes, as indicated by such tally sheets. And where the judges of election attach to their returns certificates as to the total number of votes cast in their respective voting precincts, and the tally-sheets indicate that one candidate was elected probate judge, and the certificates attached to the returns show that the opposing candidate was elected probate judge, the tally-sheets are entitled to greater weight than the certificates; and mandamus will not lie to compel the board of county commissioners to canvass the returns and issue a certificate of election to the one receiving the greater number of votes, as indicated by the certificates, as the canvassing board are bound by the tally

sheets alone, the certificates of the judges of election forming no part of the returns whatever, and, when attached, are a mere nullity.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, Trial Judge.*

*W. S. Denton* and *C. H. Parker,* for plaintiff in error.

*Houstin James* and *George P. Rush,* for defendant in error.

Opinion of the court by

BURWELL, J.: This is an action which was commenced by Charles Loran Moore against C. G. Epley, R. I. Boyington and J. H. Riggs, composing the board of county commissioners, and Frank T. Hatter, county clerk, all of Garfield county, in the district court of that county, to compel the defendants to re-convene and canvass the election returns to declare the plaintiff elected probate judge and to issue to him a certificate of election. A trial was had, and the court entered judgment granting a peremptory writ of mandamus and for costs. From this judgment the defendants appealed.

It is first contended by the plaintiff in error that the office of probate judge is an appointive office and therefore the election, so far as that office is concerned, is a nullity; and that the county commissioners have no authority to issue a certificate of election for that office.

The question as to whether the office of probate judge is an elective or an appointive office has repeatedly been the subject of comment and discussion by the bar and press

of the territory, and the point has been raised in the courts several times, but in collateral issues. This is the first time that the question has been presented in a way that the court can consider and determine it. The briefs in this case simply cite the different statutes, but point us to no decision bearing upon the issues. It therefore becomes necessary for us to decide the point from first impressions, unaided by the decisions of other courts.

We will take up the different acts of congress and of our own legislature and see what light they throw upon the subject. The first legislation regarding probate courts is found in the organic act of the Territory of Oklahoma. section nine of this act provides:

"That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace. The supreme court shall consist of a chief justice and two associate justices, any two of whom shall constitute a quorum. They shall hold their offices for four years and until their successors are appointed and qualified, and they shall hold a term annually at the seat of government of said territory. The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of the justices of the peace, shall be as limited by law: Provided, that justices of the peace, who shall be elected in such manner as the legislative assembly may provide by law, shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute, or where the debt or sum claimed shall exceed one hundred dollars; and said supreme court and district courts respectively, shall possess chancery as well as common law jurisdiction, and authority for redress of all wrongs committed against the constitution or laws of the United States or of the territory affecting persons or property."

—22

Is there anything in this language which prohibits the legislature from providing for the election of probate judges? It is contended that when congress provided that justices of the peace shall be elected in such manner as the legislative assembly shall provide by law, it, by implication, excluded probate judges from being elected, and that such view is strengthened by section 2 of the organic act, which reads:

"That the executive power of the Territory of Oklahoma shall be vested in a governor, who shall hold his office for four years and until his successor shall be appointed and qualified, unless sooner removed by the president of the United States. The governor shall ·reside within said territory; shall be commander in chief of the militia thereof; he may grant pardons for offenses against the laws of said territory, and reprieve for offenses against the laws of the United States, until the decision of the president can be made known thereon; he shall commission all officers who shall be appointed to office under the laws ·of said territory, and shall take care that the laws be faithfully executed."

These sections, in our judgment fail to establish the theory of the appellants. Congress, by the language quoted from section 9 of the organic act, meant to provide in positive language that justices of the peace shall be elected; but it does not follow that, by failing to provide for the election of probate judges in· the organic act, they shall be appointed. The organic act provides for the election of certain officers and for the appointment of others; and then in section 7 it is enacted, "that, all township, district and county officers not herein otherwise provided for, shall be appointed or elected, as the case may be, in such manner

as may be provided by the governor and legislative assembly of the territory." The organic act nowhere expressly provides for either the appointment or election of probate judges, but leaves it with the legislature and governor to determine whether they shall be elected or appointed.

In 1890 the territorial legislature enacted a special election law, (Stats. 1890, p. 544,) the first section of which provides:

"Sec. 2784. That on the first Tuesday in February, A. D. 1891, the same being the third day of said month, there shall be held an election, at which there shall be elected or chosen the county, township and road officers provided for by the laws of this territory, who shall hold their respective offices until their successors are elected and qualified under the general election laws of this territory."

Now, under this provision of the Statutes of 1890, if the office of probate judge was provided for or created by the laws of the territory, then it was at that time an elective office, but we fail to find where the legislature, during its first session, created the office of probate judge. This office was created by congress, and the territorial legislature of 1890 simply prescribed the jurisdiction, the duties and compensation of such officers, but by common consent, however, the probate judges were elected at the special election in February, 1891, and at the general election in the fall of the same year.

In 1893 the legislature noticed the matter again and in the chapter on county and county officers, (Sec. 1663, Stats. 1893,) it is provided:

"There shall be and is hereby created the following officers: county surveyor, county treasurer, sheriff, county attorney, county clerk, probate judge, register of deeds, coroner, county superintendent of public instruction, and three county commissioners, and such offices shall be filled by election or appointment as provided by law."

The Statutes of 1893, like those of 1890, take up the different county officers and prescribe their duties, but make several changes; for instance, in 1890 the legislature, under article 2 of chapter 24, defines the duties of the county treasurer, but in this article his election is not provided for. In 1893, section 1 of this article was amended by prefixing this language:

"A county treasurer shall be elected in each organized county at the general election for the term of two years, who shall hold his office until his successor is elected and qualified."

Article 6 of chapter 22 of the Statutes 1893, is exactly the same as article 2 of chapter 24 of the Statutes of 1890. This article defines the duties of the county surveyor, but fails to specifically provide for his election. The Statutes of 1890 provide for the election of sheriffs, county clerks and county attorneys, and as to these officers the statutes were not changed in 1893. In 1890 the legislature failed to provide for a register of deeds or to define his duties in a separate article; but the supreme court, after reviewing all of the statutes referring to such office, held, in the case of *Duvall v. Diehl,* 1 Okla. 66, that the office of register of deeds was created by implication; and in 1893 the legislature, (art. 4, chap. 22, Stats. 1893,) expressly provided for the election of a register of deeds and defined his duties.

Article 8 of the above named chapter provides for the election of a coroner and defines his duties.

It will be seen from the Stautes of 1890 that no provision was made therein for the election of certain county officers, among which were probate judges; and this is further recognized by chapter 61, Statutes of 1890, under the title of "Officers."

Section 3825:

"Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: (a) the death of the incumbent; his resignation. (b) his removal from office, etc."

Section 3460:

"Resignations may be made as follows: (1) Of all territorial and district offices, to the governor * * *   (4) Of all elective county officers, by filing or depositing such resignation, in writing, in the office of the county clerk, except that of county clerk, which shall be filed or deposited with the board of county commissioners, which resignations, unless a different time is fixed therein, shall take effect upon such filing or deposit. * * *"

Section 3461:

"All elective county, township and other officers may be charged, tried and removed from office for either of the causes following." (Then stating the causes for which removals may be made.)

Then section 4466 provides how vacancies may be filled. We will quote the language:

"All vacancies, except where otherwise specifically pro-

vided for, and except in offices of the members of the legis-
lative assembly, shall be filled by appointment as follows:
(1) In territorial and county offices, by the governor; (2) in
township offices, by the board of county commissioners."

There can be but little doubt that down to 1893 there
was absolutely no law for the election of probate judges;
and the legislature throughout the entire Statutes of 1890
recognizes that certain county officers are appointive. We
are of the opinion, however, that in 1893 the legislature
meant to provide for the election of all county officers, in-
cluding probate judges, as will be seen from the language
used in section 2779, Statutes of 1893, which reads:

"General elections for the purpose of electing a dele-
gate to congress, members of the legislature and all county,
township and district officers, shall be held on the Tuesday
succeeding the first Monday of 1894, and biennially there-
after."

This section is an amendment to the general election
law of 1890, which contains no provision as to what offi-
cers shall be elected. To determine that question one had
to look to the spceial election law, which just preceded the
enactment of the general law; and the legislature of 1893,
recognizing this fact, amended the general law by enacting
this section 1, which provides for the election of all county
officers.

It is true that under the title or "Counties and County
Officers," in the Statutes of 1893, as in the Statutes of 1890,
the legislature provides expressly for the election of cer-
tain county officers, and makes no provision as to whether
others shall be elected or appointed; but in reading these

portions of the Statutes we should not overlook the main object which the legislature had in view when enacting them. The legislature was creating certain offices and defining the duties of those who filled them, and while it expressly provided for the election of certain officers and made no provision as to others, in the light of all of the different statutes it cannot be said that the legislature intended that those for whose election no provision was made in the chapter entitled, "Counties and County Officers," should be appointed. The general provisions of the election law of 1893 for the election of all county officers in no way conflicts with the other portions of the statutes, and the fact that the legislature has specifically provided for the election of certain county officers in another place in the statutes, is wholly immaterial. The legislature by one sweeping section, which was an amendment to another former general election law, has said that, at certain stated times, general elections shall be held for the purpose of electing all county officers, and the office of probate judge is a county office and included within the terms of the amendment; and this is the view which the legislature itself took of this matter, for in 1895, it enacted chapter 18 of the Session Laws of 1895, entitled "Court Probate," and section 2 of this chapter provides:

"That in addition to other qualifications required of a probate judge, he shall be a licensed lawyer in good standing, shall be of the age of twenty-five years or over, and shall have practiced his profession at least three years next preceding his election."

Here, by express language, the legislature recognizes that probate judges are to be elected and from this section

we clearly see the legislative intent regarding the different laws passed prior to the enactment of the section just quoted. Nor is this all. We come on down to the legislature of 1897, and it amended the general election law again and gave the form of official ballot, (p. 149,) and under the group of "County Officers," the very first office named is that of probate judge, thereby recognizing again that they are to be elected and not appointed. And, finally, in 1899, the legislature enacted a new election law, the first section of which provides:

"General elections for the purpose of electing a delegate to congress, members of the legislative assembly, and all county, township and district officers, shall be held on Tuesday succeeding the first Monday in November, 1900, and biennially thereafter."

This language is plain and, it seems to us, is susceptible of only one construction, and that is, that all county officers, including probate judges, shall be elected. This is what the legislature has twice said, once in 1893, and again in 1899; and if the legislature of 1899 had not intended that probate judges should be elected, it would have provided otherwise, for section 1 of the election law of 1893, is practically the same as the election law of 1899, and every member of that legislature certainly knew that from 1893 to 1899 probate judges were elected by the people, and the legislature of 1899, with the knowledge of this fact, having again provided that all county officers should be elected, it is only reasonable to say intended that the people should continue to elect the probate judges.

After careful research and due deliberation, we are of

the opinion that, under the law, probate judges are to be elected by the people the same as other county officers.

One other question remains to be determined in this case, and that is what constitutes the election returns under our statutes. The real parties in interest in this action are James K. Beauchamp and Charles Loran Moore. These two parties were candidates for probate judge on different tickets. There were discrepancies in three precincts between the number of votes shown by the tally-sheets and the number of votes shown by the certificates of the judges of election; for instance, the tally-sheets show that Beauchamp received in all of the precincts of the county 2,393 votes, and Moore received 2,365, giving to Beauchamp a majority of 28 votes. But the judges of election, after counting the ballots of three townships, certified that Moore received a certain number of votes in each of these townships, which number in each instance was larger than that shown by the tally-sheet. By giving the certificates of the judges of election greater weight than the tally-sheets, Moore would be elected by one vote. The trial judge held that the certificates of the judges of election controlled, and therefore ordered the board of county commissioners to re-convene, to recanvass the returns, to declare Moore elected and to issue to him a certificate of election. In order to determine whether the certificates or the tally-sheets shall receive the greater weight, we will have to examine the different provisions of the election law. Section 7, chapter 13, of the Session Laws of 1899, provides:

"The county clerk of each county in this territory, shall make out and cause to be delivered to the inspector of the several precincts in their respective counties, at least ten

days previous to an election, a suitable number of blank forms of poll-books, containing one column headed, 'Names of Voters,' and an additional column headed, 'Number of Voters,' and also form of election returns, with proper captions, forms of oaths, and forms of certificates and tally papers necessary to be used in all elections hereafter held in this territory."

Let us notice this language carefully, and see just what the clerk shall deliver to the inspector. He shall deliver a poll-book, and that poll-book shall contain one column headed "Names of Voters," and an additional column headed, "Number of Voters," and it shall also contain forms of election returns, with proper captions, forms of oaths, forms of certificates and tally papers necessary to be used in all elections hereafter held in this territory. Now, the poll-book is the entire book which contains all of the record made by the election board, and the legislature has directed that this book shall contain three things, (1,) a column headed, "Names of Voters," (and the statute contemplates that the name of each voter will be recorded under this head,) and, (2,) that it shall contain another column headed, "Number of Voters," (and under this heading each voter's name receives its proper number in the order that the vote is cast;) and, (3,) this poll-book shall contain the election returns, and states of what these returns consist. First, they shall have proper captions, and this means that there shall be a caption showing what the book is, and captions grouping together territorial offices, county offices, township offices, etc.; and then there are certain forms of oaths required by law, and they are a part of the returns. The statute also requires certain certificates; and the defendant in error contends that the certificates

meant by the stautes are certificates of the judges of election showing the number of votes cast for each candidate; but with this we cannot agree. The statute nowhere provides for such a certificate, and does not require the judges to make a certificate of any kind, as we think that the legislature did not intend to vest the county clerk with the power to prescribe a certificate such as would suit his fancy. If it did, then the certificates would be different in each county and the county clerk would be the sole judge of what the certificate contained. In McCrary on Elections it is said:

"The law is well settled that statute certifying officers can only make their certificates evidences of the facts which the statute requires them to certify, and when they undertake to go beyond this, and certify other facts, they are unofficial, and no more evidence than the statement of any unofficial person. This rule of course applies to election returns, and to all certificates which are by law required to be made by officers of election, or of registration, or by returning officers. They can only certify to such facts as the law requires them to certify. The certificate of such an officer is not, however, vitiated by the fact that it contains the certification of facts outside of those which the officer has a right to certify. If it in fact certifies the proper facts it is good, and the remainder of the certificate is to be rejected as surplusage." (McCrary on Elections, sec. 243, p. 162.)

As the statute points out no facts which the judges of election are required to certify to, no certificate need be made by them; but what is meant by section 7, which requires the county clerk to provide poll-books which shall contain forms of certificates? We have searched the election law through, and have concluded that the legislature

had reference to the certificates or jurats of the officers to the affidavits or oaths required by the election law. There are certainly no other certificates required as a part of the returns. But the returns are not complete without the tally-sheet. In fact these are a very essential part of the returns. Sections 47 and 48 of the election law of 1899 provide:

"Section 47. Immediately on closing the polls, the board count all the ballots remaining unvoted, record the number of the same on the tally-sheet, and destroy all of such ballots by totally consuming by fire.

"Section 48. The board shall then proceed to canvass the votes, beginning first with the territorial ballots and completing them before proceeding with the local ballots. If in the canvass of the votes, any ballot is found not endorsed with the initials of the poll clerks, as provided in this act, and any ballot which bears any distinguishing mark, the same shall not be counted, but shall be preserved by the inspector, and at the close of the count placed with the seals of the ballot packages in paper bags, securely sealed and so returned with the ballot box to the county clerk. The poll clerk shall make a memorandum on the tally-sheet of the number of mutilated ballots, and the condition of the seal of the ballot packages. Any ballot upon which the judges are unable to agree as to how it should be counted, the same shall not be counted, but shall be treated as a mutilated ballot, and returned in like manner On completing the count and recording the same on the tally-sheets, all of the ballots shall be sealed up in paper bags; those mutilated or otherwise defective in one package, marked 'Mutilated,' and the others in a package marked, 'Counted,' with the name of the election board written across the seals of each package, said packages, together with the tally-sheets and poll-books shall be returned along

with the ballot boxes to the county clerk, within two days after the holding of such election. Said ballot packages shall be preserved by the county clerk for the period of one year. In case of a contest of elections, such ballot packages may be submitted in evidence. Immediately before the adjournment of the election board they shall make a memorandum of the total vote cast for each candidate and deliver a copy of the same to each member of said board."

These sections direct what shall be done after the polls are closed, but no certificate is mentioned in either of them. On completing the count and recording the same on the tally-sheets, all of the ballots are to be sealed up in paper bags. Those mutilated or otherwise defective in one package, marked, "Mutilated," and the others in a package marked, "Counted," with the name of the election board written across the seals of such packages, and the packages together with the tally-sheets and poll-books, are to be returned along with the ballot boxes to the county clerk within two days after the holding of such election. The ballot packages are to be preserved by the county clerk for the period of one year, so that in case of a contest of election they may be submitted in evidence. The election clerks, however, are required immediately before the board adjourns, to make a memorandum of the total vote cast for each candidate, and to deliver a copy of the same to each member of the election board, but this is only a memorandum; the judges or clerks of election make no certificate in connection therewith.

Finally the legislature by the terms of section 63 of the election law of 1899, provides for the canvassing by the board of county commissioners of the several election re-

Epley *et al.* v. Moore.

turns made to their office; but there is nothing in this section which indicates what is meant by the election returns. We have not reviewed and commented upon the different authorities cited because we are bound by the provisions of our own statutes, and the decisions from other states construing statutes which provide for certificates to be made by judges of elections as a part of their returns, are no aid to us here. As no certificate is required of the judges of election as to the number of votes cast for the respective candidates, the county commissioners properly declined to be governed by the recitations contained in the certificates referred to herein. They are bound by the tally marks on the tally-sheets.

The peremptory writ of mandamus ought not to have been issued and therefore the judgment rendered by the trial court is hereby reversed at the cost of appellee, and the case is hereby remanded with direction to the court below to enter judgment in conformity with the views herein expressed.

McAtee, J., who presided in the court below, not sitting; Hainer, J., concurs in the conclusion that probate judges are elective officers, but dissents from the rule as stated in the second paragraph of the syllabus and from the judgment reversing the case; all the other Justices concurring.